UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-2858-B |
| | § | |
| COLOPLAST CORPORATION, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Coloplast Corporation's Motion to Transfer Venue (Doc. 14).

For the reasons set forth below, the Court **GRANTS** the motion and **TRANSFERS** this case to the

Fort Worth Division of the Northern District of Texas.

**I.**

**BACKGROUND**[1]

This is a products-liability action by Plaintiff Lisa Mitchell ("Mitchell") against Defendant

Coloplast Corporation ("Coloplast") for injuries resulting from the implantation of a pelvic mesh

device developed, marketed, and distributed by Coloplast. *See* Doc. 9, Pl.'s Am. Compl., ¶¶ 1–2.

Mitchell is a resident of Tarrant County, and Coloplast is a corporation organized under Delaware

law and with a principal place of business in Minnesota. *Id.* ¶¶ 3–4.

Mitchell claims that Coloplast provided information to her and her physician, Dr. Charles

Safely ("Dr. Safely"), suggesting that the pelvic mesh device was "safe and effective for use in the

---

[1] The Court draws its factual account from Mitchell's amended complaint, the parties' briefing on
the motion to transfer, and the evidence submitted in connection with the motion to transfer.

treatment of pelvic organ prolapse and stress urinary incontinence." *Id.* ¶ 46. Consequently, Mitchell

alleges that on June 16, 2016, Dr. Safely surgically implanted the mesh device into Mitchell at North

Hills Hospital in Tarrant County. *Id.* ¶ 44; Doc. 15, Pl.'s Resp., 1. After the mesh device was

implanted, Mitchell claims she suffered "severe and debilitating pain," as well as numerous other side

effects. Doc. 9, Pl.'s Am. Compl., ¶ 47. Had Mitchell and Dr. Safely "been adequately warned of the

risks" associated with the mesh device, Mitchell claims, Dr. Safely "would not have recommended"

use of the device, and Mitchell would not have consented to its implantation. *Id.* ¶ 51.

Dr. Safely continued treating Mitchell at Dr. Safely's office in Tarrant County through March

2020, and he performed one "mesh revision" procedure on Mitchell in Tarrant County. *See* Doc.

14-3, Def.'s Ex. C, 1 (documenting April 26, 2018, procedure); Doc. 14-4, Def.'s Ex. D, 67 (noting

Mitchell's "mesh revision in 2018"). Dr. Safely also referred Mitchell to Dr. Muriel Boreham ("Dr.

Boreham"), whose practice is located in Dallas County. Doc. 15, Pl.'s Resp., 3. On March 27, 2020,

Mitchell had her first visit with Dr. Boreham in Dallas. *Id.* At Mitchell's second appointment with

Dr. Boreham on June 24, 2020, Dr. Boreham diagnosed Mitchell with "vaginal mesh erosion" and

discussed removing the mesh device. *Id.* Dr. Boreham, though located in Dallas County, removed

the mesh device in either Tarrant County or Collin County. *See id.* at 1–2 (claiming the removal took

place in Tarrant County); Doc. 14-5, Def.'s Ex. E, 1 (reflecting a July 7, 2020, procedure in Plano).

Following the removal, Mitchell had her post-operative exam at Dr. Boreham's Dallas office. Doc.

15, Pl.'s Resp., 3.

Mitchell filed a products-liability suit against Coloplast on November 15, 2020, in the

Northern District of Texas, Dallas Division. *See generally* Doc. 1, Pl.'s Compl. Subsequently, she

amended her complaint, narrowing her causes of action to design defect, failure to warn, negligence,

and breach of implied warranty. Doc. 9, Pl.'s Am. Compl., ¶¶ 57–123. On February 8, 2021, Coloplast filed a motion to transfer (Doc. 14) this case from the Dallas Division to the Fort Worth Division of the Northern District of Texas. This motion is ripe for review, and the Court considers it below.

## II.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district or division if: (1) the plaintiff could have brought that action there originally, and (2) the transfer would be for "the convenience of parties and witnesses, and in the interests of justice . . . ." The party seeking transfer bears the burden of proving both elements. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc); *Calloway v. Triad Fin. Corp.*, 2007 WL 4548085, at *2 (N.D. Tex. Dec. 27, 2007).

In assessing the second prong, courts engage in a multi-factor inquiry. *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (quoting *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004)). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the [governing law]; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* The balance of these factors must clearly weigh in favor of transferring to the new venue. *Id.* If

"the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Thomas v. City of Fort Worth*, 2008 WL 4225556, at * 2 (N.D. Tex. Sept. 15, 2008); *see also Volkswagen I*, 545 F.3d at 315.

A court must also independently consider how much weight to assign a plaintiff's choice of forum. *Davis v. City of Fort Worth*, 2014 WL 2915881, at *2 (N.D. Tex. June 25, 2014). "A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Id.* (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011) (citations omitted)).

## III.

## ANALYSIS

As explained below, Mitchell could have filed this case in the Fort Worth Division, and the § 1404(a) factors weigh in favor of transfer. The Court therefore grants Coloplast's motion and transfers this case to the Fort Worth Division.

A.    *Venue Is Proper in the Fort Worth Division.*

In deciding whether to transfer a case, the Court must first decide "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Davis*, 2014 WL 2915881, at *2 (quoting *Volkswagen I*, 371 F.3d at 203). Venue is proper in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

The parties appear to agree that Mitchell could have filed this case in the Fort Worth Division. Doc. 14, Def.'s Mot., 5 (arguing venue would be proper in the Fort Worth Division); *see generally* Doc. 15, Pl.'s Resp. (failing to contest this argument). Indeed, Dr. Safely implanted the

mesh device at issue and treated Mitchell post-implantation in Fort Worth. Thus, "a substantial part

of the events . . . giving rise" to Mitchell's claims occurred in the Fort Worth Division. *See* § 1391(b);

*Barton v. C.R. Bard, Inc.*, 2020 WL 1809702, at *2 (N.D. Tex. Apr. 9, 2020) (considering where the

physician implanted the allegedly defective medical device into the plaintiff as a location where a

substantial part of events occurred).Venue would therefore be proper in the Fort Worth Division.

B.       *The § 1404(a) Factors Favor Transfer to the Fort Worth Division.*

         Since venue would be proper in Fort Worth, the Court must weigh the applicable § 1404(a)

factors. Before doing so, however, the Court first notes that Mitchell is a citizen of Tarrant County,

which is in the Fort Worth Division. 28 U.S.C. § 124(a). Thus, her choice to file suit in Dallas—

"outside her home forum"—is not entitled to significant weight. *See Davis*, 2014 WL 2915881, at *2;

*see also Stults v. Maalt Specialized Bulk LLC*, 2018 WL 1697583, at *2 (N.D. Tex. Apr. 6, 2018).

         With that in mind, the Court now turns to the public-interest and private-interest factors.

As further explained below, the relative ease of access to sources of proof favors the Fort Worth

Division, and the Fort Worth Division has a greater local interest in the resolution of this case.

Additionally, Mitchell's residence in Fort Worth tips the cost-of-attendance factor slightly in favor

of Fort Worth. Finally, all of the remaining § 1404(a) factors are neutral. Thus, the balance of the

factors clearly warrants transfer to the Fort Worth Division. *See, e.g.*, *AllChem Performance Prods.,*

*Inc. v. Oreq Corp.*, 2013 WL 180460, at *7 (N.D. Tex. Jan. 17, 2013) (concluding transfer was

warranted where the relative ease of access to sources of proof favored transfer and the transferee

court had a greater local interest in the case).

1.    Private-interest factors

a.    *Relative ease of access to sources of proof*

The relative ease of access to sources of proof weighs in favor of transferring this case. Courts typically conclude this factor supports transfer when most sources of proof and witnesses are located in the transferee court. *See, e.g., Stults*, 2018 WL 1697583, at *2 (holding this factor supported transfer from Dallas to Fort Worth when the plaintiff could not give examples of medical treatments occurring in Dallas, but there were five examples of treatments in Fort Worth); *Davis*, 2014 WL 2915881, at *3 (holding this factor favored transfer from Dallas to Fort Worth when Fort Worth was the location of the incident, records, and "all known witnesses"); *Brown v. Exachtech, Inc.*, 2017 WL 6756669, at *1–2 (N.D. Tex. Dec. 8, 2017) (finding, in a products-liability action, that "the majority of evidence" would be in the forums where the defendant–manufacturer was located and where implantation of the device occurred, rather than the forum where the device was removed), *R.&R. adopted*, 2017 WL 6729485 (N.D. Tex. Dec. 28, 2017).

In Mitchell's case, the majority of relevant medical records and witnesses are in Fort Worth. Though Mitchell points out that Dr. Boreham maintains relevant medical records in Dallas, *see* Doc. 15, Pl.'s Resp., 4, Mitchell only references three appointments with Dr. Boreham related to her removal surgery, and the surgery itself did not even occur in Dallas. *See id.* at 3–4. Records of Dr. Boreham's Dallas treatment may be relevant to Mitchell's medical expenses and damages. Nevertheless, the bulk of Mitchell's medical records are in Fort Worth, where the office of her implanting physician, Dr. Safely, is located; where Mitchell had the mesh device implanted; and where Mitchell had a "mesh revision" surgery prior to removal. Doc. 9, Pl.'s Am. Compl., ¶ 44; *see* Doc. 14-3, Def.'s Ex. C, 1 (documenting the mesh revision). As noted above, the removal of the

mesh device may have occurred in Fort Worth, too. *See* Doc. 15, Pl.'s Resp., 1–2. In addition, the only identifiable witness located in Dallas is Dr. Boreham. *See id.* at 4. Meanwhile, both Mitchell and Dr. Safely reside in Tarrant County. *Id.* at 5; Doc. 9, Pl.'s Am. Compl., ¶ 3; Doc. 14, Def.'s Mot., 7. Therefore, access to sources of proof favors Fort Worth because the majority of relevant medical records and identifiable witnesses are located there.[2]

> b.      *Availability of compulsory process to secure the attendance of willing witnesses*

Coloplast concedes this factor is neutral, and Mitchell fails to address it. Doc. 14, Def.'s Mot., 5 n.2; *see generally* Doc. 15, Pl.'s Resp. Thus, the Court does not weigh it.

> c.      *Cost of attendance for willing witnesses*

This factor slightly favors transfer. While none of the § 1404(a) factors are dispositive, "the most significant factor is the cost of attendance to witnesses." *Stults*, 2018 WL 1697583, at *1 (citation omitted). "This factor primarily concerns the convenience of *nonparty* witnesses." *Davis*, 2014 WL 2915881, at *3 (emphasis added) (citation and quotation marks omitted); *see, e.g.*, *Barton*, 2020 WL 1809702, at *4; *Stults*, 2018 WL 1697583, at *3. The Fifth Circuit has created a "100-mile threshold" pertaining to this factor: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204–05). However, even when the two forums are within 100 miles of one another, the Court must account for the costs of attendance. *In re*

---

[2] Neither party mentions the location of the records related to the mesh device's design, manufacture, or development. *See generally* Doc. 14, Def.'s Mot.; Doc. 15, Pl.'s Resp.; Doc. 16, Def.'s Reply. Thus, the Court lacks this information and cannot consider it.

*Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).

Here, Dr. Safely is the only identifiable nonparty witness in Fort Worth, and Dr. Boreham is the only identifiable nonparty witness in Dallas. Dr. Safely's testimony is likely just as important, if not more important, than Dr. Boreham's, because Dr. Safely prescribed and implanted the mesh device. As Coloplast points out, Dr. Safely can testify about "his knowledge of the relevant benefits and risks associated with" the mesh device; "his experience treating pelvic organ prolapse"; "his experience performing implantation procedures" of the mesh device; Mitchell's "course of treatment"; and more. *See* Doc. 14, Def.'s Mot., 7. Thus, the Court rejects Mitchell's suggestion that Dr. Safely is a "less important witness[]." Doc. 15, Pl.'s Resp., 4. Finally, though less significant in the Court's analysis, Mitchell is also a witness residing in Fort Worth. *See The Whistler Grp., Inc. v. PNI Corp.*, 2003 WL 22939214, at *3 (N.D. Tex. Dec. 5, 2003) ("Of the witnesses, the convenience of the non-party witnesses is accorded the greatest weight." (citations omitted)). In sum, there is one nonparty witness located in Dallas, while there is one nonparty witness and one party witness located in Fort Worth. Accordingly, this factor slightly favors transfer.[3]

> d.      *All other practical problems that make trial of a case easy, expeditious, and inexpensive*

This factor is likely neutral. The practical-problems factor "is a catch-all consideration that includes all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Davis*, 2014 WL 2915881, at *4. Courts have considered, for example, the place of the alleged wrong and the potential for delay or prejudice if the case is transferred. *See, e.g.*, *Stults*, 2018 WL 1697583,

---

[3] Because Fort Worth and Dallas are only thirty-to-forty miles apart, the Court need not account for the "100-mile threshold," although even a thirty-to-forty-mile distance still poses some inconvenience. *See Volkswagen II*, 545 F.3d at 317.

at *4; *Careview Commc'ns, Inc. v. Silicon Standard Corp.*, 2009 WL 2998326, at *7 (E.D. Tex. Sept. 17, 2009).

Because Mitchell asserts various products-liability claims against Coloplast, *see* Doc. 9, Pl.'s Am. Compl., ¶¶ 57–123, the place of the alleged wrong is where Coloplast designed and manufactured the mesh device. *See Brown*, 2017 WL 6756669, at *3 ("The location of the alleged wrong in a products liability case is principally where the defendant designed and manufactured the allegedly defective [d]evice." (citation omitted)).[4] Since neither party indicates where the mesh device was designed and manufactured, the Court does not consider the place of the alleged wrong.

Next, the Court agrees with Coloplast that undue delay and prejudice are unlikely. *See* Doc. 14, Def.'s Mot., 9. Indeed, Mitchell does not assert any prejudice or delay would occur if the case were transferred, *see generally* Doc. 15, Pl.'s Resp., and the Court has not entered a scheduling order in this case. Overall, because the location of the alleged wrong is unknown and there is not a likelihood of delay or prejudice, the practical-problems factor is neutral.

> 2.      The public-interest factors

>> a.      *The administrative difficulties flowing from court congestion*

This is another neutral factor. Neither party has presented any evidence of administrative difficulties flowing from court congestion in the Dallas or Fort Worth Divisions. Under these circumstances, courts deem the factor neutral. *See, e.g.*, *McNew v. C.R. Bard, Inc.*, 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020). Coloplast, relying upon *Tansey v. City of Keller*, 2012 WL 2092935, at *3 (N.D. Tex. May 21, 2012), suggests that this factor weighs in favor of transfer because this

---

[4] Thus, contrary to Coloplast's argument, it is not where Dr. Safely "deci[ded] to prescribe and surgically implant" the mesh device. *See* Doc. 14, Def.'s Mot., 9.

"case should have been filed in the Fort Worth Division in the first instance . . . ." Doc. 14, Def.'s

Mot., 10. But in *Tansey*, the plaintiff filed in the Dallas Division solely because he thought he would

"receive a fair trial" in Dallas—"none of the operative facts or events involved in [the] lawsuit

occurred in . . . Dallas," and neither the plaintiff nor any witnesses resided in Dallas. *Tansey*, 2012

WL 2092935, at *3. In contrast, Mitchell has one witness and at least some evidence in Dallas. Thus,

the Court will not adopt the reasoning of *Tansey* and concludes that this factor is neutral.

> b.     *The local interest*

The local-interest factor favors the Fort Worth Division. This factor "generally favors the

venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods*

*P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (citations omitted). This factor "also

weighs in favor of transfer when the parties reside in the transferee venue." *Stults*, 2018 WL 1697583,

at *4 (citation omitted).

Fort Worth has a greater local interest than Dallas in deciding this case. First, Mitchell

resides in the Fort Worth Division, and no party resides in the Dallas Division. *See* Doc. 9, Pl.'s Am.

Compl., ¶¶ 3–4. Second, the mesh device was implanted in Fort Worth. *Id.* ¶ 44. Third, Mitchell

received treatment related to the mesh device, including a revision surgery, in Fort Worth. *See* Doc.

14-3, Def.'s Ex. C, 1 (documenting April 26, 2018, procedure). Finally, Mitchell claims Coloplast

marketed the mesh device to her and Dr. Safely, both of whom are located in Fort Worth. Doc. 9,

Pl.'s Am. Compl., ¶ 46. The only connection to the Dallas Division is Dr. Boreham's treatment of

Mitchell in Dallas for the injuries that had already occurred. Under these circumstances, the Fort

Worth Division has a greater local interest in this dispute.

        *c.*      *Familiarity of the forum with the governing law*

Coloplast concedes this factor is neutral, and Mitchell does not address it. Doc. 14, Def.'s Mot., 5, n. 2; *see generally* Doc. 15, Pl.'s Resp. Thus, the Court does not consider it.

        *d.*      *Conflict of laws*

Neither party mentions this factor, so the Court does not consider it.

    3.      <u>Balance of factors</u>

Overall, the majority of factors are neutral. But all of those that are not neutral weigh in favor of transfer to the Fort Worth Division. Namely, the relative ease of access to sources of proof and the local-interest factor favor transfer to Fort Worth. Additionally, the cost of attendance of willing witnesses at least slightly favors transfer. Finally, because Mitchell filed suit outside of her home forum, her choice to file in the Dallas Division is entitled to little weight. Thus, the balance of factors clearly favors transfer.

In so holding, the Court does not simply engage in "a raw counting of the factors [on] each side[.]" *Radmax*, 720 F.3d at 290 n.8. Rather, at a practical level, the facts pertinent to the transfer analysis indicate that this case belongs in Fort Worth: Mitchell, who is a resident of Fort Worth, alleges that she and Dr. Safely, who is located in Fort Worth, were misled about the safety of the mesh device, resulting in Dr. Safely's implantation of the device in Fort Worth. Doc. 9, Pl.'s Am. Compl., ¶¶ 3, 26–27, 44, 46. After the implantation, which undisputedly gave rise to Mitchell's injuries, Dr. Safely continued to treat Mitchell in Fort Worth for years—including by performing a revision procedure for the device. *See* Doc. 14-3, Def.'s Ex. C, 1. The fact that Mitchell received treatment in Dallas years after the implantation does not overcome these connections to Fort Worth. Accordingly, the Court **GRANTS** Coloplast's motion to transfer (Doc. 14) and **TRANSFERS** this

case to the Fort Worth Division.

## IV.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Coloplast's motion (Doc. 14) and

**TRANSFERS** this case to the Northern District of Texas, Fort Worth Division. Further, given that

the Court transfers this case, it declines to rule on the pending motion to dismiss (Doc. 11).


**SO ORDERED.**

**SIGNED: April 22, 2021.**



_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE